OPINION
{¶ 1} Defendant, James Ratliff, appeals from his conviction for felonious assault.
 {¶ 2} Valerie Stevens worked as a barmaid at McGuffy's House of Draft, 5418 Burkhardt Road, Riverside, Ohio. On May 5, 2002, shortly before 2:30 a.m., Ms. Stevens' boyfriend, Raymond Humphrey, and Humphrey's friend Matt Lanter, arrived at the bar to pick Ms. Stevens up after she got off work. Defendant, who is owner of the bar, invited Humphrey, Lanter and Stevens to stay for an after-hours party. When the bar closed at 2:30, the party began. Humphrey and Lanter sat at the bar drinking while Stevens helped the bartender, Shane Woolf, make drinks.
 {¶ 3} At some point Ms. Stevens' took a drink she made to the office to show Defendant. He instructed Ms. Stevens to try again, and to make drinks for both of them. Ms. Stevens returned to the bar and made two drinks which she then took back to Defendant's office.
 {¶ 4} When Ms. Stevens entered the office, Defendant shut and locked the door, and stood between Ms. Stevens and the door. Defendant then forced his hand down Ms. Stevens' shorts and touched her vaginal area, telling her she "wasn't wet." Defendant demanded that Ms. Stevens perform oral sex on him or lose her job. Ms. Stevens repeatedly tried to pull Defendant's hand away but was unsuccessful. She eventually was able to leave the office after telling Defendant she was going to make them more drinks.
 {¶ 5} Ms. Stevens was aware that Defendant could see the bar area on a monitor in his office. Ms. Stevens made another drink, and asked Mr. Woolf, the bartender, to take it back to Defendant. When Woolf refused, Ms. Stevens told Mr. Humphrey and Mr. Lanter it was time to leave. Mr. Humphrey noticed that Ms. Stevens was urgent with her request to leave, and that she was very upset and "freaked out."
 {¶ 6} After they left the bar, Ms. Stevens told Mr. Humphrey and Mr. Lanter that Defendant had sexually assaulted her. By now she was crying and hysterical. Mr. Humphrey used his cell phone to call police, but the phone's battery died before he could complete the call. Mr. Humphrey then decided to return to the bar and confront Defendant about what he had done to Ms. Stevens.
 {¶ 7} Defendant was standing in the doorway when Mr. Humphrey pulled into the parking lot of the bar. Defendant shouted: "You guys got a problem?" Mr. Humphrey responded: "What happened? Why is Valerie [Ms. Stevens] so upset?" Mr. Lanter also responded to Defendant, saying: "Yes, we do have a problem; what you did and said to Ms. Stevens." Defendant looked at Ms. Stevens, who was curled up in the front passenger seat, crying. Defendant remarked that she's had too much to drink and was being overly emotional. Defendant then said: "I'll show you a f____ problem," and then went back inside the bar.
 {¶ 8} Defendant came back outside about thirty seconds later. Defendant walked toward Mr. Humphrey, and as he did Defendant pulled a gun from the back of his pants and put it against the side of Mr. Humphrey's head. Humphrey reacted by immediately turning his head, whereupon the gun discharged. Fortunately, Mr. Humphrey suffered only a gash above his eye and powder burns to his face. He also suffered temporary hearing loss for several weeks.
 {¶ 9} Defendant ran back inside the bar for a short time and then came back out, got in his car and sped away. Mr. Lanter recorded the license plate number and called police. When police arrived on the scene they discovered that the bullet from Defendant's gun had penetrated the window of the Family Dollar store next to the bar.
 {¶ 10} Defendant appeared voluntarily at the police station several hours later and gave a statement. Defendant denied intentionally firing the gun, and claimed that it had discharged accidentally when he shoved or hit Mr. Humphrey with the gun while defending himself.
 {¶ 11} Defendant was indicted on one count of felonious assault. R.C. 2903.11(A)(2). A firearm specification was attached to the charge. R.C. 2941.145. Defendant was found guilty following a jury trial of both the charge and the specification. The trial court sentenced Defendant to two years on the felonious assault charge and an additional consecutive three years on the firearm specification, for a total of five years imprisonment. Execution of sentence was suspended and Defendant was placed on an appeal bond pending the outcome of this appeal.
 {¶ 12} Defendant timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 13} "The appellant was denied a fair trial due to the admission of prohibited prior bad acts evidence."
 {¶ 14} Defendant argues that the trial court erred in admitting, over his objection, Ms. Stevens' testimony describing her sexual assault by Defendant. Defendant claims that this evidence was completely unrelated to the offense with which he was charged, was highly prejudicial, and that its admission violated Evid.R. 404(B).
 {¶ 15} A trial court has broad discretion in admitting or excluding evidence, and its decision in such matters will not be disturbed on appeal absent an abuse of its discretion. State v. Sage (1987),31 Ohio St.3d 173. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams
(1980), 62 Ohio St.2d 151.
 {¶ 16} It is improper to admit evidence of other crimes, wrongs or acts by a defendant, wholly independent of the offense for which he is on trial. Such evidence is generally irrelevant to any issue the jury is required to determine, and is therefore inadmissible. Neither is such evidence admissible to prove a bad character from which the jury might infer that the person acted in conformity with his bad character on the particular occasion to commit the offense alleged. State v. Smith (1992),84 Ohio App.3d 647; Evid.R. 404(B). This is known as the propensity rule, and it prohibits using evidence of other acts of wrongdoing to establish that a defendant committed the acts charged in the indictment.Smith, supra. The policy behind this rule is not based upon relevance, but rather on unfair prejudice. Id.
 {¶ 17} Other acts of wrongdoing may be admissible, however, for certain limited purposes enumerated in Evid.R. 404(B), which provides:
 {¶ 18} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Accord: R.C.2945.59. The exceptions in Evid.R. 404(B) must be strictly construed against admissibility of evidence of other acts of wrongdoing. State v.Burson (1974), 38 Ohio St.2d 157, 158.
 {¶ 19} The State argues that evidence of Defendant's sexual assault on Ms. Stevens was admissible to show the motive for Defendant's aggressive conduct when Mr. Humphrey and Mr. Lanter confronted Defendant about his sexual assault of Ms. Stevens, which led ultimately to the shooting and the felonious assault charge in this case.
 {¶ 20} Motive has been defined as "a mental state which induces an act; the moving power which impels action for a definite result." Smith,supra. Because it is assumed that human conduct is prompted by a desire to achieve a specific result, motive is generally relevant in criminal trials even though the matter involved is not an element of the offense which the prosecution must prove to secure a conviction. Id. It is, unless readily evident from the accused's conduct, a part of the narrative of the state's theory of its case against the accused seeking to prove his criminal liability. See R.C. 2901.21(A).
 {¶ 21} It has been said that we can be more angered when confronted with our own mistakes or misdeeds than we are by the mistakes of others who misjudge us. Anger is a mental state, and it can induce an act or reaction. If the Defendant became angry when confronted with accusations that he had sexually assaulted Ms. Stevens, that might explain why he produced a gun and held it to his accuser's head. It might also explain why Defendant pulled the trigger when the victim persisted, which was the State's theory. In that context, evidence of the prior sexual assault is probative of the Defendant's motive for engaging in the criminal conduct alleged. It is also probative of the lack of accident, which was the Defendant's theory about why the gun discharged. On either grounds, evidence of the sexual assault was properly admissible pursuant to Evid.R. 404(B).
 {¶ 22} The jury was entitled to know the setting of this case: the circumstances and sequence of events leading up to the crime charged.State v. Wilkinson (1980), 64 Ohio St.2d 308, 317-318; Smith, supra.
Evidence of Defendant's sexual assault of Ms. Stevens, which constitutes other acts of wrongdoing, was properly admitted to establish Defendant's motive for his aggressive behavior toward Mr. Humphrey. The trial court did not abuse its discretion in admitting this evidence.
 {¶ 23} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 24} "The appellant's conviction for felonious assault with a deadly weapon is not supported by sufficient evidence and is against the manifest weight of the evidence."
 {¶ 25} Defendant was found guilty of violating R.C. 2903.11(A)(2), which provides:
 {¶ 26} "No person shall knowingly do either of the following:
 * * * {¶ 27} "Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 28} "Knowingly" is defined in R.C. 2901.22(B);
 {¶ 29} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 30} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 31} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 32} Defendant argues that the evidence presented at trial is insufficient to prove that he "knowingly" caused or attempted to cause physical harm to Mr. Humphrey. In that regard, Defendant told police and the jury at trial that he did not intentionally shoot at Mr. Humphrey, and that the gun discharged accidentally when he pushed or hit Mr. Humphrey with it while defending himself against Mr. Humphrey's aggressive advances.
 {¶ 33} The testimony of the State's witnesses demonstrates that Defendant placed a gun against the side of Mr. Humphrey's head. Because of its safety features, the gun could not fire unless the trigger was pulled. Mr. Humphrey turned his head just before the gun fired. Nevertheless, he sustained a gash above his eye, powder burns on his face, and temporary hearing loss.
 {¶ 34} This evidence, if believed, is sufficient to establish each and every element of felonious assault, including the requirement that Defendant act knowingly in causing the physical harm. Defendant's conduct in putting a loaded gun up against someone's head and pulling the trigger supports a reasonable inference that Defendant was aware his conduct would probably cause physical harm. Defendant's defense of "accident" doesn't prevent the State's evidence, if believed, from satisfying the test for legal sufficiency.
 {¶ 35} Viewing the evidence in this case in a light most favorable to the State, a rational trier of facts could find all of the essential elements of felonious assault proven beyond a reasonable doubt. Defendant's conviction is supported by legally sufficient evidence.
 {¶ 36} A weight of the evidence argument challenges the believability of the evidence; which of the competing inferences suggested by the evidence is more believable or persuasive. State v.Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v.Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 37} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 38} Defendant's testimony at trial as to how this shooting occurred creates a conflict in the evidence. However, it was the task of the jury as the trier of facts to resolve that conflict by determining the credibility of the witnesses and the weight to be given to their testimony. State v. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 39} Defendant's claim that his conviction is against the manifest weight of the evidence is based upon a conflict in the evidence created by his own testimony that he did not intentionally shoot at Mr. Humphrey, and that the gun accidentally discharged while Defendant was acting in self-defense, trying to keep Mr. Humphrey away from him. The jury did not lose its way, however, simply because it chose to believe the State's version of the events rather than Defendant's version. Defendant's testimony at trial, that he hit Mr. Humphrey in the head with the gun with a swinging motion was inconsistent with his statement to police that he shoved Mr. Humphrey in the shoulder with the gun. Defendant admitted that he had his finger on the trigger while the gun was in his hand
 {¶ 40} In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, this court stated:
 {¶ 41} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 42} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.State v. Bradley (October 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 43} By returning a guilty verdict the jury chose to believe the State's witnesses rather than Defendant's, which it was entitled to do. In reviewing this record as a whole we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 44} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 45} "Appellant was denied a fair trial due to the ineffective assistance of trial counsel."
 {¶ 46} In Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, the United States Supreme Court set forth the standard for judging claims of ineffective assistance of trial counsel:
 {¶ 47} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or setting aside of a death sentence requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.
 {¶ 48} "The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.
 {¶ 49} "With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Syllabus, 2. Accord: State v.Bradley (1989), 42 Ohio St.3d 136.
 {¶ 50} Defendant claims that his counsel performed deficiently by failing to file a motion to suppress the statements he made to police. Defendant suggests that his waiver of his Miranda rights and his statements to police may not have been knowing, intelligent and voluntary because he was intoxicated and tired when police questioned him.
 {¶ 51} The record demonstrates that Defendant was advised of hisMiranda rights before being questioned, that he executed a written waiver acknowledging that he understood his rights and was willing to waive them and speak with police, and that he voluntarily gave his statement to police. There is evidence that Defendant had been drinking, but no evidence that Defendant was so intoxicated when police questioned him that he was unable to understand his rights or the consequences of his decision to waive his Miranda rights. Nor is there any evidence of police coercion or overreaching that would render Defendant's statement involuntary. See State v. Waldo, (September 21, 2001) Champaign App. No. 99-CA-24, 2001-Ohio-1349. Therefore, this record fails to demonstrate any legitimate basis for filing a motion to suppress Defendant's statements to police. Counsel has no duty to file a motion to suppress that has no reasonable chance of success. State v. Benson (July 14, 1995), Montgomery App. No. 14427. No deficient performance by defense counsel has been demonstrated on this record.
 {¶ 52} The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 53} "Cumulative errors deprived the appellant of a fair trial."
 {¶ 54} Defendant argues that the existence of multiple errors that separately may be harmless, when considered cumulatively, deprived him of a fair trial. State v. DeMarco (1987), 31 Ohio St.3d 191. In resolving Defendant's claims of error however, we have not discovered any errors and hence there is no cumulative error.
 {¶ 55} The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
Fain, P.J. and Young, J., concur.