OPINION
{¶ 1} Defendant-appellant James Ratliff appeals from the denial of his petition for post-conviction relief, without a hearing. Ratliff contends that the trial court abused its discretion by deciding to credit affidavits of his trial counsel and the trial judge, offered by the State, on the issue of his trial counsel's ineffective assistance, and not the affidavits submitted by Ratliff.
 {¶ 2} We conclude that the trial court did not abuse its discretion when it weighed the credibility of these affidavits and decided not to credit the affidavits submitted by Ratliff. In reaching this conclusion, besides considering the affidavits and the decision of the trial court denying Ratliff's petition, we have also reviewed the entire videotape of Ratliff's original trial, which both parties have consented to being part of the record, and have requested this court to consider. We have observed nothing in that videotape that would corroborate the averments, in Ratliff's affidavits, that his trial counsel was impaired, due to intoxication, during the trial.
 {¶ 3} Because we conclude that the trial court did not abuse its discretion, the order of the trial court denying Ratliff's petition for post-conviction relief is Affirmed.
 I {¶ 4} At about 6:00 one morning in early May, 2002, as Ratliff was leaving the bar he managed and partially owned, he was confronted by Raymond Humphrey and Matthew Lanter, Humphrey's friend. Humphrey and Lanter were between the ages of 18 and 21; Ratliff was in his mid-30's. Humphrey appeared to be upset with Ratliff about something, possibly an incident involving Humphrey's girlfriend, who remained in the car from which Humphrey and Lanter emerged, just as Ratliff, a bar employee, and the employee's girlfriend, were leaving the bar.
 {¶ 5} There was conflicting evidence at trial concerning the ultimate act in the altercation. Humphrey and Lanter testified that Ratliff pulled a gun from behind him, and pointed it at Humphrey's temple. According to them, Humphrey turned his head just before the gun discharged, sending a hollow-point, .45 caliber bullet through the Family Dollar store next to the bar. Humphrey and Lanter testified that had Humphrey not turned his head just prior to the gun discharging, Humphrey would have been shot in the head. As it was, Humphrey sustained a laceration and bruise to his head, and some powder burns to his cheek.
 {¶ 6} According to Ratliff, Ratliff used the loaded gun, which he was carrying behind him for protection as he always does when carrying a large amount of money, and hit Humphrey in the head with the gun in an effort to fend off what Ratliff perceived to be an imminent physical attack. There is no dispute that the gun discharged while it was next to Humphrey's head. There was also unrebutted forensic testimony that the particular gun, which was recovered and received in evidence, would not discharge without the trigger being squeezed.
 {¶ 7} Ratliff was indicted for Felonious Assault, with a firearm specification. He was tried by a jury. At trial, he was defended by Herbert Creech.
 {¶ 8} At the conclusion of the trial, the jury was instructed on the elements of Felonious Assault. The jury was also instructed on the elements of Assault, as a lesser-included offense. The jury was instructed with respect to the elements of a firearm specification, with respect to both the principal charge, Felonious Assault, and the lesser-included charge. Finally, the jury was instructed concerning the elements of self-defense, as an affirmative defense to both the principal and lesserincluded charges. The jury found Ratliff guilty of Felonious Assault, with a firearm specification, and Ratliff was sentenced accordingly.
 {¶ 9} Ratliff appealed from his conviction and sentence, but this court affirmed the judgment of the trial court. State v.Ratliff, Montgomery App. No. 19684, 2003-Ohio-6905.
 {¶ 10} Ratliff then filed a petition for post-conviction relief, contending that his trial counsel was ineffective, due to an impairment of trial counsel's judgment as the result of alcohol intoxication. Ratliff submitted his own affidavit, together with the affidavits of David W. Frazier, Todd Wilkerson, Mike Hounsell, and Alison Lindsay, in support of his petition. The State submitted the affidavits of Herbert Creech, Ratliff's trial counsel, and the Honorable David Sunderland, the trial judge, in support of a motion for summary judgment that the State filed with respect to Ratliff's petition for post-conviction relief.
 {¶ 11} The trial court rendered a decision sustaining the State's motion for summary judgment, and denying Ratliff's petition for post-conviction relief, without a hearing. From the order of the trial court denying his petition for post-conviction relief without a hearing, Ratliff appeals.
 II {¶ 12} Ratliff's sole assignment of error is as follows:
 {¶ 13} "The trial court erred in granting summary judgment to the state since it incorrectly applied the standards for determining summary judgment motions and incorrectly applied the summary judgment standards concerning credibility."
 {¶ 14} In reviewing a petition for post-conviction relief, a trial court may, in the sound exercise of discretion, judge the credibility of affidavits submitted by the petitioner, in determining whether to accept those affidavits as true statements of fact. State v. Calhoun (1999), 86 Ohio St.3d 279, 284.
 {¶ 15} In its decision denying Ratliff's petition for post-conviction relief, the trial court, after citing State v.Calhoun, supra, offered the following analysis of the affidavits submitted by the parties:
 {¶ 16} "The State has satisfied it's [sic] initial burden by offering the affidavits of Attorney Herbert Creech and Judge David G. Sunderland. These affidavits clearly controvert the allegations set forth in Defendant's petition of defense trial counsel's defective performance. Defendant must respond by setting forth facts signaling that there is a genuine issue of material fact to be heard. No response to the motion for summary judgment was filed on behalf of the Defendant, however, the Court, as indicated above, will consider the affidavits attached to the Petition to Vacate or Set Aside Judgment in determining whether there is a genuine issue of material fact to be heard.
 {¶ 17} "In considering the affidavits attached to the Petition to Vacate or Set Aside the Judgment, only a small portion of the affidavits actually deal with the performance of defense counsel at the trial and those portions of the affidavits which consider trial performance dwelled upon defense counsel's consumption of alcohol. The opinions expressed by the affiants, not only give layman opinions as to how a trial should be conducted, but one also gives a layman's medical opinion. The Court must focus on the defense counsel's courtroom performance and not his lifestyle or alcohol usage outside of the courtroom.
 {¶ 18} "The Defendant in this matter retained Mr. Creech after discharging Attorney Patrick Flanagan on August 30, 2002. Therefore, the Defendant was aware that he could discharge any attorney that he was not satisfied with. Defendant in his Affidavit sets forth numerous meetings he had with Attorney Creech in various bars throughout the area. These meetings commenced from the time he hired Mr. Creech to represent him and continued through out his trial. If Mr. Creech's consumption of alcohol raised his concern about the effectiveness or abilities of Mr. Creech, he could have obtained new counsel."
 {¶ 19} Based upon this part of the trial court's decision, we conclude that the trial court exercised its discretion, available to it under State v. Calhoun, supra, to determine that the affidavits submitted by Ratliff are not worthy of belief. We do note that the trial court also made some observations concerning the likelihood that any alleged deficient performance prejudiced the defense. In concluding that there was no reasonable likelihood thereof, the trial court relied upon the decision of this court, in affirming the judgment of the trial court after Ratliff's original appeal, in which we concluded that Ratliff's conviction is supported by the evidence, and is not against the manifest weight of the evidence. Because the ineffective assistance of trial counsel, if established, could be expected to affect the evidence presented in the trial court, we disagree with this part of the trial court's reasoning. The mere fact that there is evidence in the record to support a conviction, and that the conviction is not against the manifest weight of the evidence, does not preclude a claim of ineffective assistance of trial counsel.[1] However, we conclude that the trial court independently determined that Ratliff's affidavits, upon which he relied to establish that his trial counsel was ineffective, are not worthy of belief.
 {¶ 20} As the trial court noted in its decision, the affiants who provided the affidavits upon which Ratliff relies, including Ratliff, himself, are lay persons, with no expertise in the fields of law or medicine. Arrayed against them were the affidavits of Herbert Creech and Judge Sunderland. Judge Sunderland's affidavit is especially telling because, in his affidavit, Judge Sunderland acknowledges that he "was aware that Mr. Creech had previously had a reputation for drinking alcoholic beverages which may have impinged on his legal practice," and averred that, "on account of my awareness of that previous reputation and the seriousness of the offense charged in Mr. Ratliff's case, I was particularly sensitive to observing any indications that Mr. Creech was intoxicated during that trial and I remained alert to any signs of intoxication or impairment." In his affidavit, Judge Sunderland then notes that, "despite being sensitive to trying to observe any indications of intoxication on the part of Mr. Creech, I recall having sensed no odor of alcohol on or about Mr. Creech (including during sidebar conferences when he was only inches from me, and in close conversations in chambers); that I observed no signs or indications of intoxication affecting Mr. Creech's ability or performance; that Mr. Creech did not appear to be `disjointed,' `unassured,' `unprepared,' `scatterbrained,' `disoriented,' `confused,' unalert or having lapses in attention during the conduct of the trial or in appearances in the case before or after trial."
 {¶ 21} At the oral argument of this appeal, both parties acknowledged that there is a videotape transcript of the original trial. The parties consented that that videotape transcript of the original trial be made a part of the record in this appeal, and both parties urged this court to review that videotape in connection with this appeal. We have watched the entire videotape of the trial. We note that the way in which sidebar conferences were conducted corroborates Judge Sunderland's averment concerning Herbert Creech's proximity to him during those conferences. Finally, and most importantly, we have observed nothing in the videotape of the trial to corroborate, or to suggest, that Herbert Creech's judgment, speech or motor skills were impaired to any extent during the trial. If there were anything in that videotape tending to corroborate the affidavits submitted by Ratliff in support of his petition for post-conviction relief, we would be inclined to reverse the summary judgment, and remand this cause for a hearing on Ratliff's petition, but we find nothing in the videotape to corroborate those affidavits. To the contrary, the videotape transcript of the trial portrays a professional performance by Herbert Creech that is well within the range of competent, effective representation.
 {¶ 22} We conclude that the trial court did not abuse its discretion in deciding not to credit Ratliff's affidavits, and therefore to deny his petition for post-conviction relief, without a hearing. Ratliff's sole assignment of error is overruled.
 III {¶ 23} Ratliff's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
Brogan and Young, JJ., concur.
[1] Indeed, a claim of ineffective assistance of trial counsel would be superfluous in that case, since the conviction would be subject to reversal upon the independent ground that it was not supported by the evidence or was against the weight of the evidence.