OPINION
{¶ 1} After entering a plea of no contest, Charles G. Smith was convicted of an assault on a local corrections officer in violation of R.C. 2903.13(A) and (C)(2)(b). He was sentenced to five years of community control sanctions. Smith appeals from his conviction.
 {¶ 2} On November 14, 2002, Smith assaulted Corrections Officer Jeffrey J. Vest in the booking area of the Montgomery County Jail. He was indicted for assault of a local corrections officer, and he entered a plea of not guilty. On April 2, 2003, Smith filed a motion to dismiss on the basis that exculpatory evidence had not been provided to him by the state as required by California v. Trombetta (1984), 467 U.S. 479, 489,104 S.Ct. 2528, 81 L.Ed.2d 413, and Arizona v. Youngblood (1988),488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281. Specifically, he sought a recording of a surveillance camera in the jail, which was in the vicinity of the assault. He also claimed that the investigating officers had engaged in "bad investigation or purposeful neglect" in failing to interview inmate witnesses to the assault. For these reasons, Smith requested that the trial court dismiss the charge against him.
 {¶ 3} Following a hearing, the trial court overruled the motion to dismiss. Smith subsequently changed his plea to no contest. He was convicted and sentenced as discussed supra.
 {¶ 4} Smith raises one assignment of error on appeal.
 {¶ 5} "* * * The court erred in overruling defendant's motion to dismiss based on a failure of the state to preserve and supply defendant with potentially key exculpatory evidence * * *."
 {¶ 6} Smith claims that his due process rights were violated by the investigating officer's failure to identify and interview possible inmate witnesses to the assault and by the state's failure to preserve a video recording from the jail.
 {¶ 7} Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the state must disclose material evidence favorable to the defendant. Brady v. Maryland (1963), 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215; State v. Yarbrough, 104 Ohio St.3d 1, 12-13,2004-Ohio-6087, 817 N.E.2d 845, ¶ 69. Evidence is material within the meaning of Brady only if there exists a reasonable probability that the result would have been different had the evidence been disclosed to the defendant. Yarbrough, 104 Ohio St.3d at 12-13. The Due Process Clause further protects a criminal defendant from being convicted where the state has failed to preserve materially exculpatory evidence or destroys in bad faith potentially useful evidence. State v. Bolden, Montgomery App. No. 19943, 2004-Ohio-2315, at ¶ 51; State v. Franklin, Montgomery App. No. 19041, 2002-Ohio-2370. In order to be materially exculpatory, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Franklin, supra, quoting Trombetta, 467 U.S. at 489. When evidence is only potentially exculpatory, the destruction of such evidence does not violate due process unless the police acted in bad faith. Id. "The term `bad faith' generally implies something more than bad judgment or negligence. `It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.'" Franklin, supra, quoting State v. Buhrman (Sept. 12, 1997), Greene App. No. 96 CA 145.
 {¶ 8} We will first address the failure to preserve the video recording.
 {¶ 9} At the hearing on the motion to dismiss, Sergeant David Hale testified that the surveillance camera covering the booking area "self-records over each other" automatically every ten to thirty days. He said that images can be transferred to a computer if the need to do so is identified before the recording space is reused and that, at the time of the assault, the system was new and it took approximately forty minutes to effectuate such a transfer. He also testified that two or three assaults occurred each day in this section of the jail, and that the recordings of the assaults were not routinely saved to computer.
 {¶ 10} Smith conceded in his motion to dismiss that the surveillance camera in the jail likely did not capture images of the alleged assault, but that it might have captured events leading up to the assault. Thus, Smith infers that the recording might have been useful in impeaching the officers' testimony and challenging their credibility. This argument essentially concedes that the video recording was not materially exculpatory, but only potentially exculpatory. As such, the failure to preserve the evidence did not violate due process unless the officers acted in bad faith in failing to preserve the recording. From Sergeant Hale's testimony, it is clear that the recording was destroyed as part of the ordinary routine at the jail of reusing recording equipment and that a practice of preserving recordings of all assaults at that location would have been cumbersome and time-consuming. There was no evidence of bad faith on the part of the officers. As such, the trial court properly refused to dismiss the case on the ground that the officers had failed to preserve the recording in question.
 {¶ 11} Smith also claims that his due process rights were violated by the investigating officer's failure to interview inmates who were potential witnesses to the assault. Deputy Jeffrey J. Vest testified that the list of inmates who were in the booking area at the time of the assault, as generated by the jail's tracking system, was likely incomplete. Vest and Deputy Michael Brem, who completed the incident report, explained that the list was likely incomplete because some people in the booking area would be going to or coming from the courts, would not yet have been entered into the computer, or might not be reflected for other reasons. They indicated that there were likely to have been approximately 50 inmates in the booking area at the time of the assault. Brem further testified that inmates are immediately locked down in their cells when an altercation breaks out, making it difficult for an investigating officer to determine who may have originally been in the booking area. He also testified that he did not believe that inmates in the cells could have seen the altercation. Brem testified that, although he had completed the incident report, he was not a detective and it was not within his duties to interview every witness to an assault.
 {¶ 12} The state has no duty to gather exculpatory evidence. State v.Farris, Clark App. No. 2003 CA 77, 2004-Ohio-5980, ¶ 20. Moreover, it is wholly speculative whether further investigation would have uncovered potentially exculpatory evidence. Thus, although the deputies could have conducted a more thorough investigation, we are unpersuaded that they were obligated to do so. Clearly, if two or three assaults occur in the booking area each day, and there are fifty or more potential witnesses to each assault, it would be unrealistic to expect deputies to interview each potential witness in completing an incident report. Because such interviews involve only potentially exculpatory evidence, Smith would have had to establish bad faith on the part of the officers to prevail on his motion to dismiss. He failed to do so.
 {¶ 13} The assignment of error is overruled.
 {¶ 14} The judgment of the trial court will be affirmed.
Fain, J. and Grady, J., concur.