OPINION
{¶ 1} Defendant-Appellant, Shawn R. Boles, appeals from his conviction and sentence for Improperly Discharging a Firearm at or into a Habitation, following a jury trial.
 {¶ 2} On May 24, 2000, Shawn Boles allegedly raped his twelve year old daughter, V.H., prior to her running over to their neighbor's house for help. On that day, Lola Smith was getting power steering fluid out of the trunk of her car when V.H. showed up and grabbed her around her legs pleading for help. V.H. told Smith that her daddy was going to kill them and that they needed to go inside her house. Smith brought V.H. into her house and called 911. When Smith heard a knock on her door, she peeked out and saw Boles leaving her front porch. Smith then heard a knock on the side window. Smith was still on the phone with the 911 dispatcher when she heard multiple gunshots being fired through her dining room window. Smith and V.H. took cover behind her bedroom door.
 {¶ 3} When the police arrived to the scene, Boles had barricaded himself in his home. Boles ultimately turned himself in to the police, and Detective Phillip Olinger interviewed him at the Dayton Police Department. Boles admitted to Detective Olinger that he went to Smith's house with a gun. Boles stated that he did not point the gun at anyone, but that it discharged until it was empty when it fell from his hand. Boles stated that the gun was a black nine millimeter FEG from Hungary. Boles gave a written statement and also signed a consent to search his residence. A black nine millimeter FEG from Hungary was found in Boles' fireplace in his home.
 {¶ 4} Boles was arrested and charged on eight counts, including one count of Rape of a person under thirteen by force or threat of force; two counts of Gross Sexual Imposition of a person under thirteen; one count of Improperly Discharging a Firearm at or into a Habitation, with a firearm specification; two counts of Felonious Assault, both with firearm specifications; one count of having a Weapon while under a Disability; and one count of Tampering with Evidence, with a firearm specification. Boles entered a no contest plea to Rape of a person under thirteen, without a force specification, and to Improperly Discharging a Firearm at or into a Habitation, with a firearm specification. In exchange, the State dismissed all of the remaining counts and specifications. The trial court sentenced Boles to fifteen years in prison.
 {¶ 5} On appeal, we vacated Boles' pleas to Rape and Improperly Discharging a Firearm at or into a Habitation and remanded the matter to the trial court for further proceedings. State v. Boles, Montgomery App. No. 18762, 2003-Ohio-2693, at ¶ 32. On remand, Boles filed a motion to sever the Rape count from the Improperly Discharging a Firearm at or into a Habitation count and requested separate trials on each count. The trial court overruled Boles' motion for severance of the issues. On the day of trial, the trial court ultimately severed the two counts when the court learned that genetic testing relating to the Rape charge had not been completed. The case proceeded to a jury trial on the charge of Improperly Discharging a Firearm at or into a Habitation. Boles was found guilty of Improperly Discharging a Firearm at or into a Habitation and was sentenced to seven years in prison.
 {¶ 6} Boles raises the following two assignments of error:
 {¶ 7} "THE TRIAL COURT ERRED IN ALLOWING ANY MENTION OF THE RAPE CHARGE AS IT WAS PREJUDICIAL TO THE APPELLANT.
 {¶ 8} "THE TRIAL COURT ERRED IN NOT REQUIRING THE CHARGES TO BE TRIED TOGETHER, IF THE RAPE CHARGE WAS TO BE REFERENCED IN THE SHOOTING IN A HABITATION CHARGE."
 {¶ 9} Boles' First Assignment of Error:
 {¶ 10} Boles contends that the trial court erred in allowing evidence of the alleged rape because it was unfairly prejudicial to him.
 {¶ 11} "A trial court has broad discretion in admitting or excluding evidence, and its decision in such matters will not be disturbed on appeal absent an abuse of its discretion. State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court.State v. Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144.
 {¶ 12} "It is improper to admit evidence of other crimes, wrongs or acts by a defendant, wholly independent of the offense for which he is on trial. Such evidence is generally irrelevant to any issue the jury is required to determine, and is therefore inadmissible. Neither is such evidence admissible to prove a bad character from which the jury might infer that the person acted in conformity with his bad character on the particular occasion to commit the offense alleged. State v. Smith (1992),84 Ohio App.3d 647, 617 N.E.2d 1160; Evid.R. 404(B). This is known as the propensity rule, and it prohibits using evidence of other acts of wrongdoing to establish that a defendant committed the acts charged in the indictment. Smith, supra. The policy behind this rule is not based upon relevance, but rather on unfair prejudice. Id.
 {¶ 13} "Other acts of wrongdoing may be admissible, however, for certain limited purposes enumerated in Evid.R. 404(B), which provides:
 {¶ 14} "`Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.' Accord: R.C.2945.59. The exceptions in Evid.R. 404(B) must be strictly construed against admissibility of evidence of other acts of wrongdoing. State v.Burson (1974), 38 Ohio St.2d 157, 158, 311 N.E.2d 526." State v.Ratliff, Montgomery App. No. 19684, 2003-Ohio-6905, at ¶¶ 15-18.
 {¶ 15} The State argues that evidence of Boles' rape of V.H. was admissible pursuant to Evid.R. 404(B) to show the motive for Boles' conduct when he followed V.H. over to Smith's house and fired multiple gunshots through Smith's window.
 {¶ 16} "Motive has been defined as `a mental state which induces an act; the moving power which impels action for a definite result.' Smith,supra. Because it is assumed that human conduct is prompted by a desire to achieve a specific result, motive is generally relevant in criminal trials even though the matter involved is not an element of the offense which the prosecution must prove to secure a conviction. Id. It is, unless readily evident from the accused's conduct, a part of the narrative of the state's theory of its case against the accused seeking to prove his criminal liability. See R.C. 2901.21(A)." Ratliff,2003-Ohio-6905, at ¶ 20. "It has been said that we can be more angered when confronted with our own mistakes or misdeeds than we are by the mistakes of others who misjudge us. Anger is a mental state, and it can induce an act or reaction." Id. at ¶ 21. "The jury [i]s entitled to know the setting of th[e] case: the circumstances and sequence of events leading up to the crime charged. State v. Wilkinson (1980),64 Ohio St.2d 308, 317-318, 415 N.E.2d 261; Smith, supra." Id. at ¶ 22.
 {¶ 17} A review of the record shows that references to the alleged rape in this case were minimal. Lola Smith never referred to the rape in her testimony, and Sergeant David Wolford merely testified that he worked in the sexual assault unit. Detective Phillip Olinger testified that his job involved conducting rape investigations and that he was dispatched to the scene of the crime to investigate a rape and shooting into a habitation. The 911 tape admitted into evidence was significantly redacted and the only reference to the alleged rape was a brief statement made by V.H. when she spoke to the 911 dispatcher. This was the extent of evidence submitted which referred to the alleged rape. Although the prosecutor did make some references to the alleged rape during her opening statement, the trial judge instructed the jury that opening statements were not to be considered as evidence. In addition, the prosecutor prefaced her comments with the following:
 {¶ 18} "Defendant is alleged to have engaged in other conduct on that date. But I must advise you; you are not here to make a determination as to his guilt or innocence regarding that other conduct. You are here for only one purpose today. And that is to determine whether Shawn Boles discharged a firearm into the habitation of Miss Lola Smith. There is going to be testimony, and it has been alleged that on that date, May 24th of 2000, Shawn Boles engaged in sexual conduct with his twelve year old daughter, [V.H.]. [V.H.] is the biological daughter of Shawn. And he and her lived at 2604 Hoover Avenue, Dayton, Ohio, in Montgomery County. After [V.H.] was sexually abused by her father she managed to escape * * * from their home and flee for safety.
 {¶ 19} "* * *
 {¶ 20} "* * * But remember, although this may seem a bit confusing, the other alleged conduct that the defendant engaged in, is for another day, for another jury. It is your job today to determine if Shawn Boles discharged a firearm into Lola's home. * * *"
 {¶ 21} If Boles became angry knowing that V.H. was running over to their neighbor's house seeking help after allegedly being raped, that might explain why he fired a gun through Smith's dining room window when Smith failed to produce V.H. after he knocked on the door and side window. In that context, evidence of the alleged rape is probative of Boles' motive for engaging in the criminal conduct alleged. Without that context, the jury would know only that Boles inexplicably fired multiple gunshots through Smith's dining room window. The jury is entitled to know the sequence of events leading up to the crime charged. Ratliff,2003-Ohio-6905, at ¶ 22. The evidence is also probative of the lack of accident, which was Boles' theory about why the gun discharged. On either grounds, evidence of the alleged rape was properly admissible pursuant to Evid.R. 404(B).
 {¶ 22} We conclude that evidence of Boles' rape of V.H., which constitutes other acts of wrongdoing, was properly admitted to establish Boles' motive for his behavior in firing a gun through Smith's dining room window. We conclude that the trial court did not abuse its discretion in admitting this evidence.
 {¶ 23} Even if the trial court had erred in admitting the evidence, the record is replete with overwhelming evidence of Boles' guilt in committing the offense of Improperly Discharging a Firearm into or at a Habitation.
 {¶ 24} Lola Smith testified that she was getting power steering fluid out of the trunk of her car when V.H. showed up and grabbed her around her legs pleading for help. She testified that V.H. told her that her daddy was going to kill them and that they needed to go inside her house. Smith testified that after she brought V.H. into her house and called 911, she heard a knock on her door. She testified that when she peeked out, she saw Boles leaving her front porch. Smith testified that after she heard a knock on the side window, she then heard multiple gunshots being fired through her dining room window.
 {¶ 25} Detective Phillip Olinger testified that Boles admitted to him that he went to Smith's house with a gun. Detective Olinger testified that Boles stated that the gun was a black nine millimeter FEG from Hungary. The evidence shows that a black nine millimeter FEG from Hungary was found in Boles' fireplace in his home. Detective Olinger also testified that Boles stated that he did not point the gun at anyone, but that it discharged until it was empty when it fell from his hand. The testimony of Chris Monturo, a Firearm and Tool Mark Examiner at the Miami Valley Regional Crime Laboratory, disputes Boles' theory.
 {¶ 26} Monturo testified that in order for the gun found in Boles' fireplace to fire, the trigger must be pulled to the rear. He testified that without the trigger being pulled, the gun would not fire due to an internal safety. Monturo testified that the internal safety would prevent the gun from firing accidentally by being dropped. Monturo also testified that the gun is a semiautomatic, which means that the trigger must be pulled each time to fire. He testified that a single trigger would not cause the gun to fire until it was empty. Monturo testified that the gun could not fall to the ground and fire until it was empty.
 {¶ 27} We conclude that there is overwhelming evidence of Boles' guilt in committing the offense of Improperly Discharging a Firearm into or at a Habitation.
 {¶ 28} Boles' First Assignment of Error is overruled.
 {¶ 29} Boles' Second Assignment of Error:
 {¶ 30} Boles contends that the trial court erred in separating the trials on the Rape count and the Improperly Discharging a Firearm into or at a Habitation count. Boles contends that he was unfairly prejudiced by not having the cases tried together, where evidence of the alleged rape was allowed in the Improperly Discharging a Firearm into or at a Habitation trial.
 {¶ 31} Given that we already concluded that the minimal evidence of the alleged rape was probative to show Boles' motive and properly admitted pursuant to Evid.R. 404(B), we find that Boles was not unfairly prejudiced by this admissible evidence in his trial on the charge of Improperly Discharging a Firearm into or at a Habitation.
 {¶ 32} We also note that Boles initially requested that the trials for each count be severed on the basis that "the evidence of these two counts, if presented in a single trial, will constitute cumulative evidence that will be prejudicial to him due to the sheer weight of all the evidence, irrespective of its probative value, which may lead the jury to convict him on both counts." Boles further argued that "the prejudicial value of the unrelated evidence pertaining to the rape count will outweigh the probative value of the evidence as it pertains to the charge relating to firing a weapon into a habitation, and that the presentation of this evidence will therefore result in an unfair trial of the weapon-related issue." We find Boles' attempt to make the exact opposite argument on appeal to be without merit.
 {¶ 33} We conclude that the trial court did not err in separating the trials on the basis that evidence of the genetic testing relating to the Rape charge had not been completed. Accordingly, Boles' Second Assignment of Error is overruled.
 {¶ 34} Both of Boles' assignments of error having been overruled, the judgment of the trial court is Affirmed.
Brogan, P.J., and Wolff, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).