[Cite as *State v. Boles*, 2011-Ohio-3720.]

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 23037 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2000-CR-1576 |
| v. | : | |
| | : | |
| SHAWN R. BOLES | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

### O P I N I O N

Rendered on the 25TH day of July, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. #0061560, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

MICHAEL C. THOMPSON, Atty. Reg. #0041420, 5 North Williams Street, Wright-Dunbar Business Village, Dayton, Ohio 45402-2843
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Shawn Boles appeals from his conviction and sentence, following a jury trial, for Rape of a Child Under the Age of Thirteen.

{¶ 2} Boles's appellate counsel has filed a brief without the assignments of error

required by App.R. 16(A)(2), but with three "issues" presented for our review. Because these issues align with the three assignments of error that we allowed in permitting Boles to re-open his direct appeal, we shall construe these issues as constituting assignments of error.

{¶ 3} Boles maintains that the trial court erred in overruling his motion to dismiss because the State failed to preserve the rape kit. He contends that pursuant to *State v. Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, his Tier III offender status must be vacated, and his original sexual offender status must be reimposed. Boles argues that the trial court erred in issuing a termination entry indicating that he was convicted of Forcible Rape of a Child Under the Age of Thirteen, when the force specification had been removed.

{¶ 4} We conclude that the trial court did not err in overruling Boles's motion to dismiss, because he fails to establish that the rape kit contained materially exculpatory evidence or that the State acted in bad fath in destroying evidence that was potentially useful to the defense. We conclude that Boles was properly designated as a Tier III sexual offender under the statutes in effect at the time of his conviction. We conclude that to the extent that the termination entry reflects the use of force, the entry is in error.

{¶ 5} Accordingly, the judgment of the trial court is Affirmed in part and Reversed in part, and the case is remanded to the trial court for the filing of a termination entry conforming to the verdict.

I

{¶ 6} In August, 2000, Boles was indicted on one count each of Discharging a Firearm into a Habitation, with a Firearm Specification; Having Weapons Under Disability; Tampering with Evidence, with a Firearm Specification; and Forcible Rape of a Child Under

the Age of Thirteen; and two counts of Gross Sexual Imposition of a Child Under the Age of Thirteen and two counts of Felonious Assault, both with Firearm Specifications. The charges all stem from an incident three months earlier, during which Boles raped his daughter V.H., after which the child ran to a neighbor's home for help. Boles followed V.H., and fired several bullets into the neighbor's home.

{¶ 7} In 2001, Boles pled no contest to Rape of a Child Under the Age of Thirteen (absent the force specification) and Discharging a Firearm into a Habitation, with a Firearm Specification; the other charges and specifications were dismissed. Boles was sentenced to 15 years in prison. We reversed Boles's convictions. *State v. Boles,* Montgomery App. No. 18762, 2003-Ohio-2693.

{¶ 8} On remand, Boles filed a motion for additional DNA testing on the evidence contained in the rape kit. The trial court granted the motion. On the scheduled trial date, Boles succeeded in having the charges severed because the additional testing had not been completed. The charge of Discharging a Firearm into a Habitation proceeded to trial, and Boles was convicted by a jury. He was sentenced to seven years in prison. We affirmed that conviction and sentence in *State v. Boles,* Montgomery App. No. 20730, 2005-Ohio-4490.

{¶ 9} In April, 2005, Boles was tried on the Rape charge, but the jury could not reach a verdict, and a mistrial was declared. In October, 2007, Boles moved to dismiss the Rape charge because the rape-kit evidence had been destroyed. The trial court conducted hearings on the motion later that month and the following April. The trial court overruled Boles's motion to dismiss.

{¶ 10} Following a second trial in 2008, Boles was convicted of the Rape charge. He

was sentenced to ten years in prison, to be served consecutively to the seven-year term ordered on the earlier conviction. We affirmed that conviction and sentence in *State v. Boles,* 187 Ohio App.3d 345, 2010-Ohio-278.

{¶ 11} Boles sought to re-open his appeal of his Rape conviction. We allowed Boles to re-open his appeal on the following issues: (1) whether the trial court erred by overruling Boles's motion to dismiss the Rape charge because the State failed to preserve the rape kit; (2) what impact, if any, the Ohio Supreme Court's decision in *State v. Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, has on Boles's sex-offender classification; and (3) whether the trial court erred by issuing a termination entry indicating that he was convicted of Forcible Rape of a Child Under the Age of Thirteen when, in fact, the force specification had been removed as a result of Boles's first appeal.

II

{¶ 12} Boles's First Assignment of Error is as follows:

{¶ 13} "WHETHER THE TRIAL COURT ERRED BY OVERRULING THE APPELLANT'S MOTION TO DISMISS WHEN THE APPELLANT'S REQUEST FOR ACCESS TO THE RAPE KIT FOR GENETIC TESTING WAS GRANTED, BUT THE RAPE KIT WAS DESTROYED BEFORE THE TEST WAS CONDUCTED."

{¶ 14} In his First Assignment of Error, Boles argues that the trial court should have granted his motion to dismiss because he was denied his constitutional right to due process when the State destroyed the rape kit. Because Boles fails to establish that the rape kit contained materially exculpatory evidence or that the State acted in bad fath in destroying evidence that was potentially useful to his defense, his assignment of error fails.

{¶ 15} Boles was indicted in August, 2000. The evidence in the rape kit was promptly tested, but no semen or blood was found for DNA testing. Although Boles never filed a motion specifically seeking the preservation of the rape kit, he did file a motion in January, 2004, seeking DNA comparisons between the samples in the kit and his own hair standards. The State did not object to the additional testing. Although the trial court granted Boles's motion the following month, he refused to provide the necessary samples for comparison. In May, 2004, Boles's attorney filed a motion for expert assistance, to include access to the rape-kit evidence. The trial court granted the motion on July 23, 2004, not knowing that the Dayton Police Department had destroyed the kit earlier that month as part of their routine maintenance procedures. More than three years later, Boles filed a motion to dismiss the Rape charge because the State failed to preserve the evidence. The trial court overruled the motion.

{¶ 16} "'The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady* [*v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215] makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant materially exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.'" *State v. Geeslin,* 116 Ohio St.3d 252, 2007-Ohio-5239, ¶9, quoting *Arizona v. Youngblood* (1988), 488 U.S. 51, 57, 109 S.Ct. 333, 102 L.Ed.2d 281. "'[U]nless a criminal defendant can show bad faith on the part of the [State], failure to preserve potentially useful evidence does not constitute a denial of due process of law.'" Id., quoting

*Youngblood,* supra, at 58.   See, also, *Illinois v. Fisher* (2004), 540 U.S. 544, 124 S.Ct. 1200, 157 L.Ed.2d 1060.

{¶ 17} Thus, we first consider whether the evidence contained in the rape kit was "materially exculpatory" or whether it was merely "potentially useful."   To be materially exculpatory, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."   *California v. Trombetta* (1984), 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413, citing *United States v. Agurs* (1976), 427 U.S. 97, 109-110, 96 S.Ct. 2392, 49 L.Ed.2d 342.

{¶ 18} In this case, the State had tested the evidence contained in the rape kit, and that testing revealed the presence of neither semen nor blood on any of the items.   Thus, the exculpatory value of the evidence was evident prior to its destruction.   However, those test results were still available to Boles for his defense, despite the kit's destruction.   Therefore, the evidence was not materially exculpatory as defined by *Trombetta.*

{¶ 19} Nevertheless, Boles insists that the evidence should have been preserved for additional testing by his own expert.   While on its face, this is not an unreasonable request, we fail to see what further testing could have revealed that would have been helpful to Boles's defense.   For example, there was no allegation in this case of the mistaken identity of the perpetrator, whereby one might anticipate that further testing could reveal genetic material that was overlooked in the first testing and that could be used to identify the rapist.   Boles's defense was that his daughter lied about the rape.   He insists that if he had raped his daughter, something containing his DNA would necessarily have been left behind on the evidence

collected in the rape kit. He concludes that a lack of DNA evidence linking him to the crime would have exonerated him. We have previously rejected the same argument as "mere speculation." *State v. Nalls,* Montgomery App. No. 21558, 2007-Ohio-1676, ¶30. See, also, *State v. Sosnoskie,* Montgomery App. No. 22713, 2009-Ohio-2327, ¶25. The evidence that he claims he was seeking to obtain by additional testing had already been provided by the State's initial testing, and those results were still available to Boles at trial.

{¶ 20} Although the evidence was not materially exculpatory, the evidence was potentially useful. "[E]vidence is potentially useful if what it might show is probative of a fact or matter in issue." *State v. Keggan,* Greene App. No. 06CA11, 2006-Ohio-6829, ¶15. Therefore, we must consider whether the State acted in bad faith in destroying the evidence.

{¶ 21} "[U]nless a criminal defendant can show bad faith on the part of the [State], failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood,* supra, at 58; *State v. Keith,* 79 Ohio St.3d 514, 1997-Ohio-367. "The term 'bad faith' generally implies something more than bad judgment or negligence. 'It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of the fraud. It also embraces actual intent to mislead or deceive another.'" *Keggan,* supra, at ¶11, quoting *State v. Smith,* Montgomery App. No. 20247, 2005-Ohio-1374, ¶7, additional citations omitted.

{¶ 22} Boles has failed to provide us with a transcript of the two-day hearing on his motion to dismiss. However, there is enough information from the trial transcript, the parties' memoranda in support of the motion and in opposition to it, and the trial court's decision overruling Boles's motion to dismiss, to support the trial court's conclusion that the

State did not act in bad faith. Sergeant Wolford explained that he signed the order to destroy the rape kit as a routine matter in July, 2004. He admitted that he failed to confirm whether the case was still ongoing and explained that the destruction was a mistake. However, mistake, bad judgment, or even negligence does not rise to the level of "bad faith" necessary to show a violation of a defendant's right to due process. *State v. Buhrman,* Greene App. No. 96CA145.

{¶ 23} Under the facts of this case, there has been no showing of actual prejudice to the defense; nor is there any evidence that the State intentionally destroyed the evidence in order "to gain some tactical advantage over [Boles] or to harass [him]." *Youngblood,* supra, at 57, citing *United States v. Marion* (1971), 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468; *United States v. Lovasco* (1977), 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752.

{¶ 24} Boles's First Assignment of Error is overruled.

III

{¶ 25} Boles's Second Assignment of Error is as follows:

{¶ 26} "WHETHER THE OHIO SUPREME COURT'S DECISION IN STATE V. BODYKE 2010-OHIO-2424 THAT DECLARED R.C. §§2950.031 AND 2950.032 UNCONSTITUTIONAL, MANDATES THAT THE APPELLANT BE CLASSIFIED USING THE PROCESS IN EFFECT PRIOR TO THE ENACTMENT OF THE ADAM WALSH ACT."

{¶ 27} In his Second Assignment of Error, Boles maintains that under the authority of *State v. Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, his Tier III offender classification must be vacated, and his original sexual offender designation must be reinstated. We

disagree.

{¶ 28} In *Bodyke,* the Ohio Supreme Court held that R.C. 2950.031 and 2950.032 violate the separation of powers doctrine and severed them from the statutory scheme. "Those sections governed the reclassification by the attorney general of sex offenders already classified by judges under a prior version of R.C. Chapter 2950." *State v. Hill,* Montgomery App. No. 23171, 2010-Ohio-2834, ¶12.

{¶ 29} In this case, Boles was not reclassified by the attorney general; he was classified by the trial court under the three-tier system when he was convicted in October, 2008. See, e.g., *State v. Wade,* Franklin App. No. 10AP-159, 2010-Ohio-6395, ¶23. Although Boles had originally been classified by the trial court under a prior version of the sex offender statutes, that classification was vacated when his original convictions were reversed. Thus, Boles was subject to the sex offender classification scheme in effect when he was convicted. *State v. Bowlin,* Montgomery App. No. 23366, 2010-Ohio-4274, ¶2.

{¶ 30} Boles's Second Assignment of Error is overruled.

IV

{¶ 31} Boles's Third Assignment of Error is as follows:

{¶ 32} "WHETHER THE TRIAL COURT'S ERROR IN CONVICTING THE APPELLANT OF RAPE OF A CHILD UNDER THE AGE OF 13, WITH A USE OF FORCE SPECIFICATION COULD BE CORRECTED BY A NUNC PRO TUNC ENTRY OR DOES IT REQUIRES (SIC) A NEW SENTENCING HEARING OR A REVERSAL OF HIS CONVICTION."

{¶ 33} In his Third Assignment of Error, Boles points out that the trial court erred in

stating in its termination entry that he was convicted of Forcible Rape of a Child Under the Age of Thirteen. The parties agree that the use-of-force specification was removed as a result of our disposition of Boles's first appeal. Boles concludes that, as a result of the incorrect termination entry, he is entitled to a new trial, or at least a new sentencing hearing. The State admits that the termination entry is incorrect, but insists that this error can be corrected by a nunc pro tunc entry.

{¶ 34} A court speaks through its journal entries. *Hairston v. Seidner,* 88 Ohio St.3d 57, 2000-Ohio-271. Generally, "trial courts lack authority to reconsider their own valid final judgments in criminal cases." *State ex rel. White v. Junkin* (1997), 80 Ohio St.3d 335, 338, 1997-Ohio-340. However, the Criminal Rules establish an exception to this general rule. Criminal Rule 36 states that "[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time." The proper means of such a clerical correction is a nunc pro tunc entry.

{¶ 35} Historically, the function of a nunc pro tunc entry has been to officially correct the record to reflect an action that a trial court has taken, but which it has not accurately recorded. See, e.g., *Helle v. Pub. Util. Comm.* (1928), 118 Ohio St. 434; *Webb v. Western Reserve Bond & Share Co.* (1926), 115 Ohio St. 247; *Reinbolt v. Reinbolt* (1925), 112 Ohio St. 526. Although courts possess the inherent authority to correct clerical errors in their judgment entries, so that the record speaks the truth, "nunc pro tunc entries 'are limited in proper use to reflecting what the court actually decided, not what the court might or should have decided.'" *State ex rel. Mayer v. Henson,* 97 Ohio St.3d 276, 2002-Ohio-6323, ¶14, quoting *State ex rel. Fogle v. Steiner,* 74 Ohio St.3d 158, 164, 1995-Ohio-278. See, also,

*State v. Miller,* 127 Ohio St.3d 407, 2010-Ohio-5705, ¶14, citation omitted. "The term 'clerical mistake' refers to a mistake or omission, mechanical in nature and apparent on the record, which does not involve a legal decision or judgment." See, e.g., *State v. Brown,* 136 Ohio App.3d 816, 819-20, 2000-Ohio-1660.

{¶ 36} Contrary to Boles's assertion, an incorrect sentencing entry does not necessarily require either a new trial or a new sentencing hearing. For example, the Ohio Supreme Court has repeatedly held that when a trial court fails to comply with Crim.R. 32(C), the proper remedy is a revised sentencing entry. *State ex rel. DeWine v. Burge,* 128 Ohio St.3d 236, 2011-Ohio-235, ¶18, citations omitted. Similarly, when a trial court properly notifies a defendant at his sentencing hearing of the proper term of his post-release control, but his sentencing entry fails to include this information because of a mistaken identification of the degree of the defendant's Robbery convictions, such errors are clerical errors correctable by a nunc pro tunc entry. *State ex rel. Womack v. Marsh,* 128 Ohio St.3d 303, 2011-Ohio-229, ¶¶13-14.

{¶ 37} In this case, both parties concede that the force specification was removed as a result of our disposition of Boles's first appeal. It appears that the use-of-force recitation was a clerical error by the trial court. The record supports this conclusion. There was no mention of Forcible Rape made during either opening statements or closing arguments, and the jury was properly instructed on Rape of a Child Under the Age of Thirteen, with no instruction on force. Furthermore, Boles was sentenced to ten years in prison, which, as the trial court pointed out, was the maximum allowable sentence for Rape of a Child Under the Age of Thirteen, while if Boles had been convicted of Forcible Rape of a Child Under the Age

of Thirteen, the trial court would have been required to impose a life sentence.

{¶ 38} Furthermore, the jury verdict, signed by all twelve jurors, sets forth Rape of a Child Under the Age of Thirteen, without use-of-force language. Therefore, the recitation in the judgment entry that Boles was convicted of Forcible Rape of a Child Under the Age of Thirteen does not conform to the jury verdict, and is therefore in error in that regard.

{¶ 39} Accordingly, Boles's Third Assignment of Error is sustained in part. This cause is Remanded for the filing of a judgment entry conforming to the verdict.

V

{¶ 40} Boles's First and Second Assignments of Error having been overruled, and his Third Assignment of Error having been sustained in part, the judgment of the trial court is Affirmed in part and Reversed in part. This cause is Remanded for the filing of a judgment entry conforming to the verdict.

. . . . . . . . . . . .

GRADY, P.J., concurs.

FROELICH, J., concurring:

{¶ 41} I concur and write separately only generally to reiterate my concerns raised in *State v. Barron*, Greene App. No. 10-CA-28, 2011-Ohio-2425. In this case, however, the Appellant had access to the tested evidence before his first trial, called the crime lab's analyst as a witness, and argued (perhaps successfully, since the jury could not reach a unanimous verdict) that there was no forensic evidence linking him to the victim. He was not denied due process by the destruction, years later, of the biological evidence, which was not done in bad faith.

. . . . . . . . . .

Copies mailed to:

Mathias H. Heck
R. Lynn Nothstine
Michael C. Thompson
Hon. Barbara P. Gorman