[Cite as *State v. McFadden*, 2021-Ohio-2204.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 20AP-179 |
| v. | : | (C.P.C. No. 19CR-1890) |
| Terry J. McFadden, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |
| State of Ohio, | : | |
| Plaintiff-Appellant/ Cross-Appellee, | : | |
| | : | |
| v. | : | No. 20AP-375 (C.P.C. No. 19CR-1890) |
| Terry J. McFadden, | : | |
| | : | (REGULAR CALENDAR) |
| Defendant-Appellee/ Cross-Appellant. | : | |

D E C I S I O N

Rendered on June 29, 2021

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, *Barbara A. Farnbacher*, and *Sheryl L. Prichard*, for State of Ohio. **Argued:** *Sheryl L. Prichard*.

**On brief:** *Yeura R. Venters*, Public Defender, and *George M. Schumann*, for Terry J. McFadden. **Argued:** *George M. Schumann*.

APPEALS from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1}   In case No. 20AP-375, plaintiff-appellant/cross-appellee, State of Ohio, appeals from a March 3, 2020 judgment of the Franklin County Court of Common Pleas convicting defendant-appellee/cross-appellant, Terry J. McFadden, of 2 counts of rape, in violation of R.C. 2907.02, and imposing an aggregate prison term of 22 years.  In the cross-appeal, McFadden alleges the trial court did not comply with Crim.R. 11 in accepting his guilty plea and convicting him of rape.

{¶ 2}   In case No. 20AP-179, defendant-appellant, Terry J. McFadden, appeals from a March 5, 2020 judgment of the Franklin County Court of Common Pleas convicting him of 2 counts of rape, in violation of R.C. 2907.02, and imposing an aggregate prison term of 22 to 27.5 years.

{¶ 3}   For the reasons that follow, we reverse the judgment in case No. 20AP-375 and vacate the judgment in case No. 20AP-179.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 4}   The facts underlying McFadden's convictions were set forth by the prosecutor at the January 9, 2020 plea hearing as follows:

> This occurred on or about April 5th, 2019.  On April 7, 2019, the Grandview Heights Police received a call from Children Services regarding potential sex abuse of two minors located at 795 Gladden Road, Columbus, Ohio, here in Franklin County.  The referral referenced two juvenile females who attended an in-home daycare at 795 Gladden Road.  It was run by the homeowner, Carol McFadden, along with the help of her husband, the defendant, Terry McFadden.  The complaint referenced that on one occasion Terry -- the defendant placed his hands down the pants of both juvenile females and touched their vaginas.
>
> Your Honor, on April 8th, 2019, Grandview Heights Police Detectives interviewed the suspect about these allegations.  He voluntarily submitted to the interview at police headquarters and he did admit to the sexual contact and the conduct as reported.  Both juvenile females were interviewed by a forensic interviewer at the Nationwide Children's, Center for Family Safety and Healing and they disclosed the incidents that did occur.

(Jan. 9, 2020 Plea Hearing Tr. at 9-10.)

{¶ 5}    On April 17, 2019, a Franklin County Grand Jury indicted McFadden on four counts of rape, in violation of R.C. 2907.02.  Counts 1 and 2 of the indictment alleged offenses against a child victim that occurred on April 5, 2019.  Count 3 of the indictment alleged an offense against the same child victim that occurred on or about January 1 to April 4, 2019.  Count 4 alleged an offense against a second child victim that occurred on or about May 1 to September 30, 2018.  All charges in the indictment were first-degree felonies.

{¶ 6}    McFadden initially pleaded not guilty to the charges in the indictment. However, on January 9, 2020, McFadden executed a plea form wherein he expressed his desire to withdraw his previously entered general plea of not guilty and to plead guilty to the charges in Counts 1 and 4 of the indictment.  At the January 9, 2020 plea hearing, the following exchange occurred:

> THE COURT:  So you know when you signed this [plea] form you're changing your previously entered not guilty plea, *you're pleading guilty to two F1 rape counts, the maximum sentence for which you could receive is an indefinite sentence of 22 years to 27-and-a-half years*, and conversely the minimum sentence for which you could receive is an indefinite sentence of 3 years to 4-and-a-half years, and the maximum fine you could receive on each count is $20,000; do you understand that?
>
> THE DEFENDANT:  Yes, Your Honor.

 (Emphasis added.)  (Jan. 9, 2020 Plea Hearing Tr. at 5-6.)

{¶ 7}    The trial court found McFadden guilty of two counts of rape and scheduled a sentencing hearing for March 3, 2020.  Counts 2 and 3 were nolled.  The sentencing hearing transcript reads as follows:

> THE COURT:  Mr. McFadden, you have been convicted of or pleaded guilty to a sexually oriented child victim offense, as such you will be a Tier III registrant for your lifetime with in person verification every 90 days.  Failure to register, failure to verify residence address at the specified times, or failure to provide notice of a change in resident address or other required information as described above will result in criminal prosecution.
>
> * * *
>
> On Count One, I am sending you to prison for 11 years.  On Count Four, I am sending you to prison for 11 years, they will

be consecutive to each other for a total of 22 years.  You have
32 days jail credit.

 (Mar. 3, 2020 Sentencing Hearing Tr. at 23-24.)

{¶ 8}    The trial court subsequently issued a judgment entry on March 3, 2020, convicting McFadden of 2 counts of rape and imposing a definite prison term of 11 years as to each count.  The trial court ordered McFadden to serve the 2 prison terms consecutively, for an aggregate prison term of 22 years.  The trial court also imposed Tier III sex offender registration requirements pursuant to R.C. Chapter 2950.

{¶ 9}    On March 4, 2020, the trial court issued a warrant ordering the Franklin County Sheriff to convey McFadden to the Ohio Department of Rehabilitation and Correction ("ODRC") to begin serving his sentence.  On that same day, however, the trial court scheduled a hearing for March 5, 2020.  The parties agreed McFadden was not conveyed to ODRC on March 4, 2020, and he was present in the courtroom and represented by counsel at the March 5, 2020 hearing.

{¶ 10} As a result of the hearing, the trial court issued an "Amended Judgment Entry" on March 5, 2020.  In the amended judgment entry, the trial court changed McFadden's prison term as to Count 1 from a definite prison term of 11 years to an "indeterminate" prison term of 11 to 16.5 years.  The trial court imposed a definite prison term of 11 years as to Count 4 and ordered McFadden to serve the 2 prison terms consecutively for an aggregate prison term of 22 to 27.5 years.

{¶ 11} McFadden timely appealed to this court in case No. 20AP-179 from the March 5, 2020 judgment entry.  The state of Ohio subsequently appealed to this court, in case No. 20AP-375, from the March 3, 2020 judgment entry.  McFadden filed a cross-appeal in case No. 20AP-375, with leave of court.  On September 1, 202o, this court issued a journal entry coordinating case Nos. 20AP-179 and 20AP-375 "for purposes of oral argument and determination."  (Sept. 1, 2020 Journal Entry.)  Accordingly, we shall determine both cases in a single decision.

## II.  ASSIGNMENTS OF ERROR

{¶ 12} In case no. 20AP-375, the state of Ohio assigns the following as trial court error:

THE TRIAL COURT ERRED IN INITIALLY IMPOSING A
DEFINITE   PRISON   TERM   FOR   DEFENDANT'S

CONVICTION ON COUNT ONE, IN CONTRAVENTION OF THE REAGAN TOKES ACT.

{¶ 13} McFadden assigns the following as trial court error:

[1.] The trial court erred by entering a judgment of conviction for sex offenses based upon guilty pleas that were not knowing, intelligent and voluntary, because the trial court completely failed to substantially comply with Crim.R. 11(C)(2)(a) by completely failing to inform the defendant-appellant that the maximum penalty involved on both count one and count four included Tier III sex offender registration duties.

[2.] The trial court erred by entering a judgment of conviction for a sex offense based upon a guilty plea that was not knowing, intelligent and voluntary, because the trial court completely failed to substantially comply with Crim.R. 11(C)(2)(a) by completely failing to inform the defendant-appellant that the maximum penalty on count one included an indeterminate prison term that contained a presumptive release date subject to rebuttal by the ODRC.

[3.] The trial court erred by entering a judgment of conviction for a sex offense based upon a guilty plea that was not knowing, intelligent and voluntary, because the trial court completely failed to substantially comply with Crim.R. 11(C)(2)(a) by completely failing to inform the defendant-appellant that the maximum penalty on count four included a determinate prison term of 11 years, and by incorrectly informing him that the maximum penalty involved an indeterminate sentence.

[4.] The trial court erred in imposing consecutive terms of imprisonment on count one and count four, where the trial court failed to make all of the required finding mandated by R.C. 2929.14(C)(4) at the sentencing hearing and further failed to incorporate all of the findings mandated by R.C. 2929.14(C)(4) into its sentencing entry.

{¶ 14} In case no. 20AP-179, McFadden assigns the following as trial court error:

[1.] The trial court did not have jurisdiction or legal authority to resentence the defendant-appellant after the trial court had caused the entry of final judgment of conviction on the journal by the clerk pursuant to Crim.R. 32(C); the resentencing judgment entered on the journal is void and must be vacated.

[2.] The trial court violated the defendant-appellant's constitutional rights to due process under Section 10, Article I, Ohio Constitution and the Fourteenth Amendment to the

U.S. Constitution, and violated Crim.R. 43(A)(1) when it resentenced him outside of his physical presence and in the absence of a valid waiver of his right to be present.[1]

[3.] The mandatory indeterminate prison term imposed pursuant to the statutory scheme set forth in R.C. 2929.14(A)(1)(a), R.C. 2929.144(B)(1), R.C. 2967.271(C) and R.C. 2967.271(D) violates the defendant-appellant's rights to a jury trial under Section 10, Article I, Ohio Constitution and the Sixth and Fourteenth Amendments to the U.S. Constitution, because the statutes provide for a presumptive release date of the minimum term but allow for the presumption to be rebutted with findings of fact after the initial guilt determination and unrelated to the facts necessary for the imposition of punishment for the commission of the offense.

[4.] The mandatory indeterminate prison term imposed pursuant to the statutory scheme set forth in R.C. 2929.14(A)(1)(a), R.C. 2929.144(B)(1), R.C. 2967.271(C) and R.C. 2967.271(D) violates the principle of separation of powers under the Ohio Constitution, because the statutes provide for a legislative delegation of judicial sentencing power to the executive branch, by allowing the ODRC to increase the defendant-appellant's punishment after the initial guilt determination in the trial court based on facts unrelated to the imposition of punishment for the commission of the offense.

[5.] The mandatory indeterminate prison term imposed pursuant to the statutory scheme set forth in R.C. 2929.14(A)(1)(a), R.C. 2929.144(B)(1), R.C.2967.271(C) and R.C. 2967.271(D) violates the defendant-appellant's rights to due process of law under Sections 10 and 16, Article I, Ohio Constitution and the Fifth and Fourteenth Amendments to the U.S. Constitution, because the statutes operate to deprive the defendant-appellant of a vested liberty interest by providing for a guilt determination by the executive branch on facts unrelated to the commission of the offense of conviction authorizing an increase in the defendant-appellant's imposed punishment, but without providing the defendant-appellant with notice of the allegations against him, without providing the defendant with an opportunity to defend against the allegations, without providing a neutral and detached factfinder, without the benefit of counsel, without the benefit of a guilt determination beyond a reasonable doubt, and

---

[1] McFadden has withdrawn his second assignment of error in case No. 20AP-179. (Nov. 9, 2021 Notice.)

without the benefit of judicial review of the executive branch's deprivation of the defendant-appellant's liberty interest.

[6.] The trial court erred in imposing an indeterminate prison term on count one without giving the defendant-appellant any of the mandatory statutory notifications required by R.C. 2929.19(B)(2)(c), (d), (f), and (h) when the court imposes an indeterminate prison term.

## III.  LEGAL ANALYSIS

### A.  McFadden's Cross-Appeal in Case No. 20AP-375

{¶ 15} In McFadden's first, second, and third assignments of error in his cross-appeal, he contends the trial court erred when it accepted his guilty plea as to Counts 1 and 4 of the indictment without first ensuring that McFadden's plea was knowing, voluntary, and intelligent.  Accordingly, we will consider these assignments of error before addressing the sentencing issues raised in the two appeals.

#### 1.  McFadden's First Assignment of Error

{¶ 16} In his cross-appeal in case No. 20AP-375, McFadden argues, for various reasons, the trial court erred in convicting him of rape because his guilty pleas were not knowing, voluntary, and intelligent due to the trial court's failure to substantially comply with Crim.R. 11.

{¶ 17} "A trial court must comply with Crim.R. 11 when it accepts a guilty plea. Among other requirements, the rule requires a trial court to determine that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, to inform the defendant of and determine that the defendant understands the effect of the plea of guilty." *State v. Green*, 10th Dist. No. 10AP-934, 2011-Ohio-6451, ¶ 10, citing Crim.R. 11(C)(2)(a) and (b).  *See also State v. Engle*, 74 Ohio St.3d 525, 527 (1996); *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 7.  "A trial court need only substantially comply with these non-constitutional requirements of Crim.R. 11." *Green* at ¶ 10, citing *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, ¶ 12. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

{¶ 18} Here, the plea form executed by McFadden on January 9, 2020 provides that he is pleading guilty to the "stipulated lesser included offense to Count One - Rape (F-1) @

2907.02(A)(2) of R.C." and the "stipulated lesser included offense to Count Four - Rape (F-1) @ 2907.02(A)(2) of R.C." The form further indicates that "[t]he maximum sentence for which the Defendant could receive is an indefinite sentence: 22 years to 27.5 years incarceration in ODRC."

{¶ 19} McFadden makes the following acknowledgment in the plea form: "I understand that mandatory prison term(s) * * * are required for the following offenses * * * and that I will not be eligible for community control sanctions, judicial release, or earned days of credit in relation to * * * these term(s): Count One - Rape (F-1) @ 2907.02(A)(2) of R.C. [and] Count Four - Rape (F-1) @ 2907.02(A)(2) of R.C." The plea form also provides:

> The maximum sentence for which the Defendant could receive is an indefinite sentence: 22 years to 27.5 years incarceration in ODRC.
>
> Conversely, the minimum sentence for which the Defendant could receive is an indefinite sentence: 3 years to 4.5 years incarceration in ODRC.
>
> *Defendant will also register as a TIER III (3) sex offender and must comply with all requirements, including residency.

(Jan. 9, 2020 Entry of Guilty Plea at 1.)

{¶ 20} At the plea hearing, the trial court engaged in the following colloquy with McFadden:

> [PROSECUTOR:] All of the parties have electronically signed this entry of guilty plea form, and upon acceptance of this, we would ask the Court to enter a Nolle prosequi as to Count Two and Count Three of the indictment. Thank you.
>
> * * *
>
> THE COURT: So you know when you signed this form you're changing your previously entered not guilty plea, *you're pleading guilty to two F1 rape counts, the maximum sentence for which you could receive is an indefinite sentence of 22 years to 27-and-a-half years*, and conversely the minimum sentence for which you could receive is an indefinite sentence of 3 years to 4-and-a-half years, and the maximum fine you could receive on each count is $20,000; do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.

(Emphasis added.) (Jan. 9, 2020 Plea Hearing Tr. at 4-6.)

{¶ 21}  In his third cross-assignment of error, McFadden argues that his plea did not constitute a knowing, voluntary, and intelligent waiver of his non-constitutional rights due to the trial court's failure to ensure his understanding of the maximum penalty.  More particularly, McFadden contends the trial court completely failed to inform him that a conviction of the sexually oriented offenses to which he was pleading guilty subjected him to Tier III reporting requirements pursuant to R.C. Chapter 2950.  We disagree.

{¶ 22}  This very issue was the subject of a recent decision of the Supreme Court of Ohio in *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765.  In that case, Dangler sought to have his no contest plea to rape vacated on the ground the trial court had not complied with Crim.R. 11(C)(2)(a).  *Id.* at ¶ 6.  Prior to accepting Dangler's plea, the trial court informed him that he would be classified as a Tier III sex offender with lifetime registration requirements but did not inform him of residency restrictions and community notification requirements associated with his status as a sex offender.  *Id.* at ¶ 1, 6-7.  In his appeal, Dangler argued his plea did not constitute a knowing, voluntary, and intelligent waiver of his non-constitutional rights due to the trial court's failure to ensure his understanding of the maximum penalty.  The Sixth District Court of Appeals held the trial court erred in accepting Dangler's plea because the trial court completely failed to inform Dangler of the statutorily mandated registration and verification requirements, community notification requirements, and residential restrictions under R.C. Chapter 2950.  The Sixth District further found a showing of prejudice is not required when the trial court completely fails to comply with Crim.R. 11.

{¶ 23}  Recognizing that a sex-offender classification constitutes a penalty for purposes of Crim.R. 11, the Supreme Court agreed with the Sixth District that the trial court's advisement did not substantially comply with Crim.R. 11(C)(2)(a).  *Id.* at ¶ 2.  The Supreme Court concluded, however, that because the trial court did advise Dangler that he would be subject to the registration requirements, the trial court did not "completely fail" to ensure Dangler's understanding of the maximum penalty.  *Id.* at ¶ 23.  The Supreme Court further concluded Dangler was "entitled to have his conviction vacated for lack of a more complete explanation only if he demonstrates prejudice."  *Id.* at ¶ 2.  Because Dangler did not establish prejudice, the Supreme Court held he was not entitled to have his no contest plea vacated due to non-compliance with Crim.R. 11(C)(2)(a).  *Id.* at ¶ 24.

{¶ 24} Here, the transcript of the January 9, 2020 plea hearing contains the following statement by the prosecutor:

> Your Honor, the maximum sentence -- penalty for this is an indefinite sentence in this case. If you were to sentence consecutively on both counts, the indefinite sentence would be anywhere between 22 years to 27-and-a-half years of incarceration in the Ohio Department of Rehabilitations and Corrections. This is a mandatory sentence on both counts. Conversely, Your Honor, if you were to give a minimum on this case, that minimum sentence would be in -- would be an indefinite sentence of 3 years to 4-and-a-half years of incarceration in ODRC.
>
> Additionally, Your Honor, *the defendant must register as a Tier III sex offender and comply with all of the requirements, including those pertaining to residency.*

(Emphasis added.) (Jan. 9, 2020 Plea Hearing Tr. at 3.)

{¶ 25} The prosecutor's reference to the Tier III registration requirements is the only mention of the sex-offender classification scheme in the plea hearing transcript. The trial court never personally advised McFadden of any of the Tier III requirements prior to accepting his guilty pleas. In our view, a more detailed explanation of the registration requirements was required in this case in order for the trial court to ensure McFadden understood the maximum penalty included sex-offender registration. Though the prosecutor informed the trial court McFadden was to register as a Tier III sex offender and comply with all the requirements, including those pertaining to residency, McFadden was not told of the residency restrictions and community-notification requirements associated with his status as a sex offender. Thus, the trial court did not substantially comply with the requirements of Crim.R. 11(C)(2)(a) with regard to the Tier III sex-offender registration requirements. The question for this court, then, is whether the trial court completely failed to comply with Crim.R. 11(C)(2)(a).

{¶ 26} The state argues that subsequent to the *Dangler* decision, the Supreme Court issued a ruling in a similar case that essentially disposes of this question in the state's favor. We agree.

{¶ 27} In *State v. Dornoff*, 6th Dist. No. WD-16-072, 2018-Ohio-3084 ("*Dornoff I*"), Dornoff entered a guilty plea to one count of rape with a firearm specification, one count of felonious assault with a sexual motivation specification, and one count of kidnapping with

a sexual motivation specification.  *Id.* at ¶ 4.  Prior to the plea hearing, appellant signed a plea form containing a notification he would be required to register as a Tier II and Tier III sex offender.  *Id.* at ¶ 16.  The plea form did not provide further detail regarding sex offender registration.  *Id.*

{¶ 28} At the plea hearing, the prosecutor informed the trial court, in Dornoff's presence, Dornoff had entered a plea of guilty, and he "will be registered as a Tier III sex offender."  *Id.* at ¶ 17.  The trial judge, however, did not personally advise Dornoff he would be required to register as a sexual offender or inform him of any of the punitive consequences of the sex-offender classification scheme.  *Id.*  The trial court accepted Dornoff's guilty plea and sentenced him to an aggregate prison term of 15 years.  The trial court subsequently denied Dornoff's pro se motions to withdraw his guilty plea.  *Id.*

{¶ 29} The Sixth District Court of Appeals in *Dornoff I* determined the trial court completely failed to comply with Crim.R. 11(C)(2)(a).  *Id.* at ¶ 18.  The Sixth District cited the following facts in support of that determination:

> At the plea hearing, the prosecutor indicated to the trial court that appellant was entering a guilty plea to three counts and "will be registered as a Tier III sex offender."  However, during the plea hearing, the trial judge did not advise appellant that he would have to register as a sexual offender, nor was appellant informed of any of the punitive consequences of entering a guilty plea and having a sexual offender classification.

*Id.* at ¶ 17.

{¶ 30} In *Dornoff I*, the Sixth District vacated the guilty plea, without a showing of prejudice, on concluding that "the trial court's failure to comply with Crim.R. 11(C)(2) renders [Dornoff's] plea involuntary, unknowing and invalid."  *Id.* at ¶ 18.  The Sixth District subsequently certified its decision in *Dornoff I* to the Supreme Court as being in conflict with a judgment of the Eighth District Court of Appeals in *State v. Creed*, 8th Dist. No. 97317, 2012-Ohio-2627.  The Sixth District certified the record to the Supreme Court on the following question:

> [D]oes a trial court's *failure to inform* a defendant about the residential restrictions imposed on sexual offenders under R.C. Chapter 2950 render the plea invalid?

(Emphasis added.)  *Dornoff I* at ¶ 23.[2]

{¶ 31}  The Supreme Court in *State v. Dornoff*, 160 Ohio St.3d 216, 2020-Ohio-3022 ("*Dornoff II*"), issued the following unanimous ruling in the appeal:

> The judgment of the court of appeals is reversed, and this cause is remanded to the court of appeals for application of *State v. Dangler*, * * * 2020-Ohio-2765.

*Dornoff II* at ¶ 1.

{¶ 32}  On remand, the Sixth District noted that "[t]his case is before us based on a remand issued by the Supreme Court of Ohio * * * in which the court reversed our decision in [*Dornoff I*], on the authority of * * * *Dangler*."  *State v. Dornoff*, 6th Dist. No. WD-16-072, 2020-Ohio-3909, ¶ 1 ("*Dornoff III*").   The Sixth District proceeded to issue the following ruling in *Dornoff III*:

> Upon review, we find the trial court, similar to the trial court in *Dangler*, failed to completely and separately advise appellant of the sex-offender registration and in-person verification requirements, community-notification provisions, and residence restrictions imposed by the sex-offender registration scheme when accepting appellant's guilty plea.  We further find, on the authority of the Supreme Court's holding in *Dangler*, this failure did not constitute a complete failure to comply with Crim.R. 11, thus appellant must demonstrate prejudice in order to have his conviction vacated.
>
> A review of the record reveals appellant has alleged he was prejudiced, but he has offered no explanation or evidence to show that he would not have entered the guilty plea but for the trial court's failure to fully advise him of all of the details of the sex-offender classification scheme.  Therefore, appellant has not established prejudice, and he is not entitled to have his guilty plea vacated for a failure of the trial court to comply with Crim.R. 11(C).

*Id.* at ¶ 17-18.

{¶ 33}  Here, the plea form signed by McFadden includes an acknowledgment by McFadden that he "will also register as a TIER III (3) sex offender and must comply with all requirements, including residency."  (Jan. 9, 2020 Entry of Guilty Plea at 1.)   The prosecutor stated at the plea hearing that McFadden "must register as a Tier III sex offender

---

[2] The Supreme Court determined there was a conflict and ordered the case held for the decision in *Dangler*. *State v. Dornoff*, 153 Ohio St.3d 1502, 2018-Ohio-4288.

and comply with all of the requirements, including those pertaining to residency." (Jan. 9, 2020 Plea Hearing Tr. at 3.)  McFadden responded in the affirmative when the trial court asked him if he read and understood the plea form before he signed it.  McFadden also acknowledged his attorney explained the plea form to him before he signed.

{¶ 34}  Thus, the record shows McFadden was provided with the same information at the plea hearing that the defendant received in *Dangler*.  The difference in this case is that the information was provided by the prosecuting attorney to the trial court in McFadden's presence.  The trial court did not personally advise McFadden he would be subject to sex offender registration requirements.  McFadden argues the failure of the trial court to personally inform him he was subject to Tier III sex-offender registration constitutes a complete failure to comply with Crim.R. 11(C)(2)(a).  Accordingly, McFadden claims he is entitled to have his conviction vacated for lack of compliance with Crim.R. 11(C)(2)(a) without demonstrating prejudice.  *Dangler*, 2020-Ohio-2765, at ¶ 2, 20, 22.

{¶ 35}  The Sixth District in *Dornoff III* rejected the argument McFadden now raises in his  first assignment of error under a nearly identical set of facts.  Applying the ruling of the Supreme Court in *Dornoff II*, the Sixth District in *Dornoff III* found Dornoff's execution of a written plea agreement advising him he would be subject to Tier II and III sex-offender requirements, combined with the prosecutor's statement at the plea hearing Dornoff would be subject to Tier II and III sex-offender requirements as a result of his guilty plea, established partial compliance with Crim.R. 11(C)(2)(a).  We agree with the decision in *Dornoff III.*  Accordingly, we hold that even though the trial court failed to completely and separately advise McFadden of the Tier III sex-offender registration requirements when accepting his guilty plea, the record evidences partial compliance with Crim.R. 11(C)(2)(a). *Dornoff II*, 2020-Ohio-3022, and *Dornoff III*, 2020-Ohio-3909, at ¶ 17, citing *Dangler.* Because the record evidences partial compliance by the trial court with Crim.R. 11(C)(2)(a), McFadden is not entitled to have his conviction vacated for lack of a more complete explanation of the Tier III sex-offender requirements unless he demonstrates prejudice. *Dangler* at ¶ 2, 23.

{¶ 36}  McFadden argues the remand order issued by the Supreme Court in *Dornoff II* does not support the proposition that partial compliance with Crim.R. 11(C)(2)(a) may be established in the absence of a personal advisement by the trial court.  The Sixth District

obviously disagrees and so do we. The Sixth District in *Dornoff I* conspicuously pointed out the trial court had not personally informed Dornoff of the Tier II and III requirements. *Dornoff I,* 2018-Ohio-3084, at ¶ 17. We do not believe the Supreme Court overlooked this critical fact when it acknowledged the conflict and issued a ruling in *Dornoff II.* Moreover, Crim R. 11(C)(2) provides, in relevant part, as follows:

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

{¶ 37} Unlike Crim.R. 11(C)(2)(b) and (c), Crim.R. 11(C)(2)(a) does not require that the trial court "inform" the defendant of the maximum penalty involved.[3] Rather, the rule simply requires the trial court to address the defendant personally to determine the defendant is "making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved." Crim.R. 11(C)(2)(a). Thus, the rulings in *Dornoff II and Dornoff III* are consistent with the language of the rule.

{¶ 38} McFadden's first assignment of error concedes he cannot establish prejudice, and he has made no such claim in his merit brief. Moreover, to establish prejudice, McFadden must establish he would not have pleaded no contest but for the trial court's failure to explain the sex-offender classification scheme more thoroughly. *Id.* at ¶ 23. Our review of the record reveals no evidence demonstrating McFadden would not have entered the guilty plea but for the trial court's failure to personally and more fully advise him of the details of the sex-offender classification scheme.

{¶ 39} Because the trial court partially complied with Crim.R. 11(C)(2)(a) in regard to the Tier III sex-offender registration requirements and because McFadden failed to show prejudice arising from the lack of substantial compliance, McFadden is not entitled to an

---

[3] Conversely, Crim.R. 11(C)(2)(b) and (c) use the term "[i]nforming the defendant" rather than "[d]etermining that the defendant."

order vacating his guilty plea to the rape offenses. Accordingly, we overrule the first assignment of error in McFadden's cross-appeal.

### 2. McFadden's Second and Third Assignments of Error

{¶ 40} In his second and third assignments of error in the cross-appeal, McFadden contends the trial court completely failed to advise him of the maximum prison term that could be imposed on him for the offenses to which he pleaded guilty. Accordingly, we will consider these assignments of error jointly.

{¶ 41} The parties agree the maximum prison term for rape, as charged in Count 1 of the indictment, is an *indefinite* prison term of 11 years plus one-half of that term for a total of 16.5 years. The maximum prison term for rape, as charged in Count 4, is a *definite* prison term of 11 years. When the indefinite prison term on Count 1 and the definite prison term on Count 4 are served consecutively, as ordered by the trial court, the maximum aggregate prison term is 22 to 27.5 years.

{¶ 42} The transcript of the plea hearing establishes McFadden was orally informed by the trial court that he faced a maximum consecutive prison term of 22 to 27.5 years. McFadden argues, however, Crim.R. 11(C)(2)(a) required the trial court to separately advise him of the maximum prison term for each of the two rape offenses to which he was pleading guilty and to explain the divergent sentencing schemes. McFadden claims he is entitled to have his conviction vacated, without a showing of prejudice, because the trial court completely failed to comply with Crim.R. 11(C)(2)(a) with respect to the maximum prison term. We disagree.

{¶ 43} McFadden relies on *State v. Johnson*, 40 Ohio St.3d 130 (1988), in support of this assignment of error. In *Johnson*, the Supreme Court addressed the requirement of Crim.R. 11(C) that a defendant be informed of the "maximum penalty." In that case, Johnson pleaded guilty to multiple offenses, and the trial court informed him of the potential maximum sentence for each offense but not that the sentences could be imposed consecutively or the total sentence that he faced. The Supreme Court found the trial court's notification complied with Crim.R. 11(C), stating:

> [T]he term "the maximum penalty" which is required to be explained is also to be understood as referring to a single penalty. In the context of "the plea" to "the charge," the reasonable interpretation of the text is that "the maximum penalty" is for the single crime for which "the plea" is offered.

> It would seem to be beyond a reasonable interpretation to suggest that the rule refers cumulatively to the total of all sentences received for all charges which a criminal defendant may answer in a single proceeding.

*Id.* at 133.

{¶ 44} McFadden claims that *Johnson* stands for the proposition that, unless the trial court separately informs the defendant of the maximum penalty for each of the offenses to which he is pleading guilty, the trial court completely fails to comply with Crim.R. 11(C)(2)(a). In other words, McFadden claims, under *Johnson*, partial compliance with Crim.R. 11(C)(2)(a) cannot be demonstrated in any other way. McFadden overstates the rule of law applied in *Johnson.*

{¶ 45} The rule of law established in *Johnson* is that a "[f]ailure to inform a defendant who pleads guilty to more than one offense that the court may order him to serve any sentences imposed consecutively, rather than concurrently, is not a violation of Crim.R. 11(C)(2), and does not render the plea involuntary." *Id.* at syllabus. *Johnson* does not speak to the issue of partial compliance raised in this appeal.

{¶ 46} In *Johnson*, the Supreme Court relied on *Barbee v. Ruth*, 678 F.2d 634 (5th Cir.1982), which found that:

> The Constitution does not require that, in order to understand the consequences of a plea of guilty, the accused must be informed by the trial court, or must otherwise know, whether or not sentences imposed for separate crimes will run consecutively or concurrently. * * *
>
> The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged. As long as [the defendant] understood the length of time he might possibly receive, he was fully aware of his plea's consequences.

(Citations and quotations omitted.) *Id.* at 635.

{¶ 47} Here, the trial court correctly informed McFadden of the maximum aggregate prison term he could receive if ordered to serve the two prison terms consecutively. Thus, the record evidences McFadden's understanding of the length of the prison term he might possibly receive. The plea colloquy also demonstrates McFadden's understanding that his sentence included an indefinite prison term, as evidenced by the trial court's statement: "you're pleading guilty to two F1 rape counts, the maximum sentence for which you could

receive is an indefinite sentence of 22 years to 27-and-a-half years."  (Jan. 9, 2020 Plea Hearing Tr. at 5.)

{¶ 48} As previously noted, Crim.R. 11(C)(2)(a) simply requires the trial court to address the defendant personally and to determine the defendant is "making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved."  McFadden knew he was pleading guilty to two rape offenses under the same statutory provision, and he understood the maximum aggregate prison term the trial court could impose for the two offenses.  Even if we were to agree with McFadden that the record does not evidence substantial compliance with Crim.R. 11(C)(2)(a), on this record, we cannot agree the record evidences a complete failure to comply with Crim.R. 11(C)(2)(a) with regard to the maximum prison term.  Though the trial court should have provided McFadden with a more detailed explanation of the different sentencing schemes applicable to each count, the trial court's advisement in this case partially complies with Crim.R. 11(C)(2)(a).  Thus, McFadden is not entitled to have his conviction vacated for lack of a more complete explanation of the divergent sentencing schemes unless he demonstrates prejudice.  *Dangler*, 2020-Ohio-2765, at ¶ 2, 23.  McFadden does not claim he would not have pleaded guilty if the trial court had separately set forth the maximum prison term for each of the two rape offenses and more thoroughly explained the divergent sentencing schemes.

{¶ 49} For the foregoing reasons, we overrule McFadden's second and third assignments of error in his cross-appeal.

**B.  State's Appeal in Case No. 20AP-375**

{¶ 50} In the state's sole assignment of error, the state argues the trial court erred when it imposed a definite prison term of 11 years as to Count 1 of the indictment in violation of the Reagan Tokes Law.  We agree.

{¶ 51} "Am. Sub. S.B. No. 201, 2018 Ohio Laws 157, known as the 'Reagan Tokes Law,' was enacted in 2018 and went into effect on March 22, 2019." *State v. Jones*, 7th Dist. No. 20 MA 0059, 2021-Ohio-1164, ¶ 18.  "The new law, ' "significantly altered the sentencing structure for many of Ohio's most serious felonies" by implementing an indefinite sentencing system for those non-life felonies of the first and second degree, committed on or after the effective date.' " *Id.* at ¶ 18, quoting *State v. Polley*, 6th Dist. No.

OT-19-039, 2020-Ohio-3213, ¶ 5, fn. 1, quoting The Ohio Criminal Sentencing Commission, SB 201 - *The Reagan Tokes Law Indefinite Sentencing Quick Reference Guide*, July 2019, citing R.C. 2929.144(A). "Under the Reagan Tokes Law, 'first-and second-degree felonies committed on or after March 22, 2019 are now subject to the imposition of indefinite sentences.' " *Jones* at ¶ 18, quoting *State v. Barnes*, 2d Dist. No. 28613, 2020-Ohio-4150, ¶ 28.

{¶ 52} Under the Reagan Tokes Law, an indefinite prison term must be imposed by the trial court for qualifying first and second-degree felonies. The prison term "consist[s] of a stated minimum prison term as selected by the trial court from a range of prison terms set forth in R.C. 2929.14(A) and a maximum prison term for qualifying first-and second-degree felonies as determined by the trial court from formulas set forth in R.C. 2929.144." *Jones* at ¶ 18, citing *Barnes* at ¶ 28.

{¶ 53} R.C. 2929.144(B)(1) provides, in relevant part, "[i]f the offender is being sentenced for one felony and the felony is a qualifying felony of the first or second degree, the maximum prison term shall be equal to the minimum term imposed on the offender under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code plus fifty per cent of that term." The term "qualifying felony of the first or second degree" is defined as "a felony of the first or second degree committed on or after the effective date of [R.C. 2929.144]." R.C. 2929.144(A).

{¶ 54} Under R.C. 2967.271(B), the offender's presumptive release date is the date the offender completes the minimum prison term. If, however, ODRC successfully rebuts the offender's presumptive release date, at an administrative hearing, ODRC may continue to confine the offender for an additional period not to exceed the maximum prison term imposed by the trial court. R.C. 2967.271(C).

{¶ 55} R.C. 2953.08 "specifically and comprehensively defines the parameters and standards—including the standard of review—for felony-sentencing appeals." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 21. R.C. 2953.08(G)(2) provides, in relevant part, as follows:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

> *The appellate court may* increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and *remand the matter to the sentencing court for resentencing.* The appellate court's standard for review is not whether the sentencing court abused its discretion. *The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following*:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) *That the sentence is otherwise contrary to law.*

(Emphasis added.)

{¶ 56} R.C. 2953.08(G)(2) commands us to employ the clear-and-convincing-evidence standard. *Jones*, 2021-Ohio-1164, at ¶ 17, citing *Marcum* at ¶ 22. The parties agree the maximum sentence as to Count 1 of the indictment includes a mandatory indefinite prison term of 11 years plus one-half of that term for a total of 16.5 years. However, at the March 3, 2020 sentencing hearing, the trial court imposed a definite prison term of 11 years on each of the 2 counts of rape, to be served consecutively, for a total of 22 years in prison.

{¶ 57} Because the trial court imposed a definite prison term for a first-degree felony committed after March 22, 2019, we find the sentence is contrary to law. *Jones* at ¶ 17; R.C. 2953.08(G)(2)(b). Accordingly, we sustain the state's assignment of error. The judgment of the trial court shall be reversed, and this cause shall be remanded for the trial court to impose both a minimum and maximum prison term as to Count 1 of the indictment in conformity with the new indefinite sentencing law.

### C. McFadden's Appeal in Case No. 20AP-179

#### 1. McFadden's First Assignment of Error

{¶ 58} In McFadden's first assignment of error in case No. 20AP-179, McFadden contends the trial court did not have jurisdiction to issue an amended sentencing entry on March 5, 2020, after having issued final judgment of conviction and sentence on March 3, 2020. We agree.

{¶ 59} Criminal law in Ohio is statutory in nature. *State v. Jama*, 10th Dist. No. 11AP-210, 2012-Ohio-2466, ¶ 36, citing *State v. Moore*, 4th Dist. No. 03CA18, 2004-Ohio-

3977, ¶ 10, citing *Lynn v. Limbert*, 117 Ohio App.3d 236 (7th Dist.1977). Trial courts, therefore, have only that power which has been conferred by statute or by rule. *Jama* at ¶ 36, citing *Moore* at ¶ 10, citing *Lynn*. *See also State ex rel. Leis v. Outcalt*, 1 Ohio St.3d 147, 148 (1982) (in Ohio, criminal procedure is governed by statute). " 'A trial court generally lacks the authority to reconsider its own valid final judgments in a criminal case.' " *State v. Watkins*, 10th Dist. No. 20AP-313, 2020-Ohio-5203, ¶ 15, *discretionary appeal not allowed*, 161 Ohio St.3d 1450, 2021-Ohio-534, quoting *Jama* at ¶ 37, citing *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, ¶ 18; *State v. Boles*, 2d Dist. No. 23037, 2011-Ohio-3720, ¶ 34. There are two recognized exceptions to this rule: "(1) when a void sentence has been imposed, and (2) when the judgment contains a clerical error." *State v. Mitchell*, 11th Dist. No. 2019-P-0105, 2020-Ohio-3417, ¶ 35, citing *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, ¶ 14.

{¶ 60} Here, the trial court issued a final judgment of conviction and sentence on March 3, 2020. There is no question the March 3, 2020 judgment entry constituted a final, appealable order as the state has appealed from that judgment in case No. 20AP-375, and McFadden has filed a cross-appeal with leave of court. The state agrees the March 5, 2020 judgment entry should be reversed.

{¶ 61} Given our determination of the state's appeal in case No. 20AP-375, it is clear the amended judgment entry issued March 5, 2020 makes substantive changes to the prison term the trial court imposed in the final judgment of conviction and sentence of March 3, 2020.[4] Accordingly, we hold the trial court was without jurisdiction to issue the March 5, 2020 amended judgment entry. *Watkins*; *Mitchell*; *Miller*.

{¶ 62} For the foregoing reasons, McFadden's first assignment of error in case No. 20AP-179 is sustained, and the March 5, 2020 judgment shall be vacated.

### D. Remaining Assignments of Error

{¶ 63} Given our determination in the state's appeal in case No. 20AP-375 that the March 3, 2020 judgment entry must be reversed and the cause remanded to the trial court for resentencing on Count 1 and given our ruling on McFadden's first assignment of error in case No. 20AP-179 vacating the amended judgment entry issued March 5, 2020, the

---

[4] Pursuant to Crim.R. 36, "[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time."

constitutional challenges to the Reagan Tokes Law raised in McFadden's third, fourth, and fifth assignments of error in case No. 20AP-179 are moot. App.R. 12(C). Because we are vacating the March 5, 2020 amended judgment entry, McFadden's sixth assignment of error in case No. 20AP-179 is also moot. Similarly, our reversal of the March 3, 2020 judgment and remand for resentencing on Count 1 means the trial court will have another opportunity to make any findings required by R.C. 2929.14(C)(4). Accordingly, McFadden's challenge to the consecutive prison term raised by the fourth assignment of error in case No. 20AP-375 is moot.

## IV. CONCLUSION

{¶ 64} Having sustained the state's sole assignment of error in case No. 20AP-375, but having overruled McFadden's first, second, and third assignments of error in the cross-appeal, and mooted McFadden's fourth assignment of error in the cross-appeal, we reverse the March 3, 2020 judgment of the Franklin County Court of Common Pleas and remand this cause for the court to resentence McFadden as to Count 1 of the indictment. Furthermore, having sustained McFadden's first assignment of error in case No. 20AP-179, but having mooted McFadden's third, fourth, fifth, and sixth assignments of error, we reverse and vacate the March 5, 2020 judgment of the Franklin County Court of Common Pleas.

*Judgment reversed, cause remanded with instructions*
*in case No. 20AP-375;*
*judgment reversed and vacated*
*in case No. 20AP-179.*

DORRIAN, P.J., and LUPER SCHUSTER, J., concur.

_____